IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMIE LYNN ABRAHAM,
Plaintiff,

vs.                                             Case No. 3:14cv130/LC/MD

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,
Defendant.

_____

REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Abraham's application for supplemental security income (SSI) benefits under Title XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Ms. Abraham filed an application for SSI benefits claiming an onset of disability as of June,17, 2010  The application was denied initially and on reconsideration, and Ms. Abraham requested a hearing before an administrative law judge (ALJ).  A hearing was held on November 14, 2012 at which Ms. Abraham was represented by counsel and testified.  A vocational expert also testified.  The ALJ entered an unfavorable decision (tr. 26-34) and Ms. Abraham requested review by the Appeals Council without submitting additional evidence.  The Appeals Council declined review (tr. 1-5).  The Commissioner has therefore made a final decision, and the matter is subject to review in this court.  *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Abraham had not engaged in substantial gainful activity since April 1, 2011, the date of her application; that she had severe impairments of (1) major depressive disorder, (2) anxiety disorder, (3) marijuana abuse, (4) mild degenerative changes in the cervical spine, and (5) mild degenerative changes in the lumbar spine; that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; that she had the residual functional capacity to perform light work with postural

limitations and limited to simple tasks related to unskilled work with basic interactions with co-workers, supervisors and the public; that she had no past relevant work; that she was 36 years old, a younger individual, with a limited education and the ability to communicate in English; that there are jobs that exist in significant numbers the national economy that she can perform; and that she has not been disabled as defined in the Act from April 1, 2011.

## STANDARD OF REVIEW

In Social Security appeals, this court must review the Commissioner's decision "with deference to the factual findings [of the ALJ], and close scrutiny of any legal conclusions." *Parks v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Thus, the court reviews the ALJ's conclusions of law *de novo*, while giving deference to factual findings that are based on relevant evidence in the record. *Parks*, 783 F.3d 850*; Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Parks,* 783 F.3d 850; *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

"The Commissioner's factual findings are conclusive if supported by 'substantial evidence,' 42 U.S.C. § 405(g), which is 'relevant evidence as a

reasonable person would accept as adequate to support a conclusion.'" *Parks*, 783 F.3d 850 (quoting *Bloodsworth v. Heckler,* 703 F,2d 1233, 1239 (11th Cir, 1983)). Substantial evidence is more than a scintilla but less than a preponderance. *Moore*, 405 F.3d at 1211.  In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence.  *Moore,* 405 F.3d at 1211 (citing *Bloodsworth*); *Miles,* 84 F.3d at 1400.  "Even if the proof preponderates against the [Commissioner]'s decision, [it must be affirmed] if supported by substantial evidence.  *Parks,* 783 F.3d 850*; Ingram* v*, Comm'r, Social Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007);  *Miles*, 84 F.3d at 1400.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Social Security regulations establish a five-step evaluation process to

analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. *See* 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520. The steps are:

1. Is the claimant currently engaged in substantial gainful activity?

2. Does the claimant have any severe physical or mental impairment that meets the duration requirement?

3. Does the claimant have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4. Considering the claimant's residual functional capacity, can the claimant perform past relevant work?

5. Can the claimant perform other work given the claimant's residual functional capacity, age, education and work experience?

*Id.* These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot

perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Ms. Abraham was involved in an motor vehicle accident on June 17, 2010. She was seen at the emergency room, complaining of moderate neck, shoulder and mid-back pain. She had no history of depression or psychosis, but had previously abused marijuana, opiates and cocaine. X-rays revealed no fractures or soft tissue swelling, but did reveal a slight subluxation of C4 on C5 plus degenerative joint disease. She was not admitted to the hospital, and was discharged home with Lortab and instruction to see her physician.

Ms. Abraham followed up with treatment by Lanway H. Ling, MD, from June 30, 2010 through May 26, 2011. Dr. Ling provided conservative care during the eleven months following the accident (tr. 328-41), and on the last visit noted "Do not feel she is a candidate for Disability." (Tr. 328).

Also during the summer and autumn following the accident, Ms. Abraham was seen by two chiropractors, Drs. Frank and Wallace, who provided various form of massage and manipulation from June 23, 2010 through October 29, 2010, but provided no opinions on physical limitations (tr. 284-98). From May 2011, the last time she saw Dr. Ling, through the ALJ's decision, rendered on January 31, 2013, a period of twenty months, Ms. Abraham was not seen by any health provider for her

alleged neck and shoulder pain.

On March 1, 2012, Ms. Abraham went to the Avalon Center at Lakeview in Pensacola, Florida, for psychological problems. At her intake interview she said she was depressed and anxious and did not sleep well. She claimed anxiety over the prior twenty-four years and panic attacks over the prior seven months, largely related to sexual advances on her by her father. She was provided with counseling during the next five months, and was prescribed Abilify, Xanax, Busbar and Trazodone, although not all at the same time. Her diagnosis was major depressive disorder, recurrent, severe, without psychotic features, and anxiety disorder. When she was last seen on August 8, 2012, she was asked how she was doing, and responded that her father was still acting inappropriately toward her (tr. 378-429).

At the administrative hearing Ms. Abraham testified that she still suffered from neck, shoulder and back pain from the motor vehicle accident of more than two years prior. She said she could not afford to see doctors because she had no insurance. She also said she suffered from endometriosis going back many years. She recounted four surgeries for the problem (for which there is no record) and described her pain level as seventeen on a scale of one to ten (tr. 38-74).

## DISCUSSION

Ms. Abraham argues that the ALJ erred (1) in failing to order consultative examinations, (2) in not making a function-by-function analysis of her exertional

*Page 8 of 13*

limitations, (3) by failing to make a proper credibility analysis, and (4) by posing an incomplete hypothetical to the vocational expert, and that she was disabled from her onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Abraham was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

### 1. Consultative examinations.

Ms. Abraham first contends that the ALJ had insufficient information upon which to base his opinions, and that he should have ordered independent evaluations, or should have asked the treating providers for additional information or opinions. The Social Security disability benefits process is inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), *Crawford & Company v. Apfel,* 235 F.3d 1298 (11th Cir. 2000), and is informal. *Richardson v. Perales,* 402 U.S. 389, 400-401, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993); 20 C.F.R. § 404.900(b). With informality comes a duty to develop a complete record as is done by European magistrates. *Kendrick,* 998 F.2d at 456. It is well established in this Circuit that the ALJ has an affirmative duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Lucas v. Sullivan,* 918 F.2d 1567, 1573 (11th Cir. 1990); *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986); *Cowart v.*

*Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  The duty to develop the record exists even though the plaintiff is represented by a lawyer or paralegal.  *Brown*, 44 F.3d at 934 (citing *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir.Unit B July 1981)); *Smith*, 792 F.2d at 1551 (citing *Cowart*, 662 F.2d at 735).  This duty requires that the ALJ "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," *Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits."  *Crawford & Company, supra*, 235 F.3d at 1304.

That does not mean, however, that the ALJ must search to the last document to find every possible piece of relevant evidence.  Rather, he must have sufficient evidence to decide the case.  The seminal cases in this Circuit on the ALJ's duty to develop the record are *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. Unit B Oct. 15, 1981) and *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984).  Both held that it is not necessary for the ALJ to order a consultative examination unless the record established that such an examination was necessary to enable the ALJ to make a decision.  Where he has sufficient information to decide the case, however, he can do so.  *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to a decision, no showing of prejudice is made).

Moreover, "[t]he claimant has the burden of proving he [or she] is disabled,

and is therefore responsible for producing evidence in support of the claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912 (a), (c).

Here, there was sufficient information upon which the ALJ based his decision. Dr. Ling specifically stated that he did not feel Ms. Abraham was a candidate for disability, and placed no limitations on her activities when he last saw her. The mental health professionals at Avalon likewise offered no opinions on limitations, but their notes clearly show that Ms. Abraham was functioning appropriately, even though depressed. And while Ms. Abraham testified that her endometriosis was horribly crippling, she did not produce any record to show she had been treated for that condition. The ALJ did not err in not ordering treating source opinions or independent evaluations.

### 2.   Function-by-function Analysis.

Ms. Abraham next contends that the ALJ erred in not performing a function-by-function analysis of her exertional limitations, citing SSR 96-8p. That policy interpretation by the Social Security Administration provides, among many other things, that during the residual functional capacity assessment, the Administration "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c) and (d) of 20 CFR 404.1545 and 416.945." Failure to perform such a function-by-function analysis, plaintiff claims, is error.

First, Ms. Abraham cites no authority for her contention that the ALJ must

make a written record of any function-by-function analysis, nor can the court find any. Second, the paragraphs referred to in the SSR in 20 CFR 416.945 (applicable to SSI claims) refer to (b) physical abilities, (c) mental abilities, and (d) other abilities affected by impairments. Here the ALJ exhaustively discussed Ms. Abraham's physical and mental abilities and restrictions in determining her residual functional capacity. Nothing in the regulations or the case law required him to set out the specifics of his findings on a function-by-function basis. The ALJ said that he considered all the evidence, which he set out in detail, in reaching his determination. Ms. Abraham seems to claim that the function-by-function analysis must be in writing and specifically referred to as such,, but her claim is unsupported. The ALJ did not err, and Ms. Abraham is not entitled to reversal on this ground.

3. <u>Credibility Analysis.</u>

Ms. Abraham next contends that the ALJ erred in determining that she was not credible. To the contrary, he explained that (1) the medical evidence did not support impairments to the extent she was claiming, (2) the record did not describe any record of symptoms related to endometriosis, (3) Dr. Ling did not feel she was qualified for disability, (4) the record did not support her claim that she would doze off quite a few times during the day, (5) the medical record did not support her claim that she could sit for only twenty minutes at a time, stand for only twenty to thirty minutes, and then only if she leaned on something, or walk for only ten to fifteen minutes, and (6) the chiropractor reports showed improvement (tr. 32). The ALJ

further noted that in activities of daily living, Ms. Abraham said that she shopped, prepared meals, did light housework, helped a friend in changing his bandages and brought him food and drink (tr. 30). All of the cited evidence contradicted her testimony to some degree. Finally, it is noteworthy that although she claimed to have been depressed for many years due to abuse at home, she did not claim any mental impairment in her original application (doc. 11-6. p. 6), and the hospital note on the day of the motor vehicle accident indicated no history of depression or psychosis. The ALJ did not err, and Ms. Abraham is not entitled to relief on this ground.

    4.    <u>Improper hypothetical.</u>

For her last ground for relief, Ms. Abraham contends that the hypothetical posed to the vocational expert at the administrative hearing was deficient. She says that because the ALJ erred in determining the extent of her limitations and in developing the record, he did not include all relevant information in his hypothetical. But because, as explained above, the ALJ did not err in his determinations, the hypothetical contained all limitations the ALJ had properly found Ms. Abraham is not entitled to relief on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be

**directed to close the file.**

**At Pensacola, Florida this 31st day of August, 2015.**

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.